UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

v.

D-2, NANCY RAZALAN,
D-3, GENEROSA AGUSTIN,

           Defendants,
_____/

Case No. 08-20668

HON: AVERN COHN

## MEMORANDUM AND ORDER

### I. Introduction

This is a criminal case. Defendants Nancy Razalan (Razalan) and Generosa Agustin (Agustin) have plead guilty to making false statements to a federal health care program in violation of 42 U.S.C. § 1320a-7b(a)(2)(ii). The false statements involved kickbacks paid by defendants to co-defendant Rebecca Sharp (Sharp) for referrals.

Razalan's Rule 11 plea agreement includes the following provisions:

- A guideline range of 30-37 months (with a statutory cap of 12 months),
- A term of supervised release of up to one (1) year,
- A special assessment of $25.00
- A fine of not more than $10,000.00
- Restitution of $225,000.00 payable to the Medicare Trust Fund.

Agustin's Rule 11 plea agreement includes the following provisions:

- A sentence not to exceed 12 months' imprisonment

1

- A term of supervised release of up to one (1) year,

- A special assessment of $25.00

- A fine of not more than $10,000.00

- Restitution of $80,000.00 payable to the Medicare Trust Fund.

The parties were unable to reach an agreement with respect to additional restitution. Particularly, each Rule 11 agreement contains the following provision:

> The parties disagree as to whether the additional following amounts should be ordered as restitution by the Court and will litigate this issue prior to sentencing: (1) [ ] in monies paid to co-defendant Rebecca Sharp's companies; and (2) [ ] in monies paid by Medicare to Defendant for services billed on behalf of patients acquired from co-defendant Rebecca Sharp.

Defendants were sentenced on May 13, 2010. However, Orders of Judgment and Commitment have not been entered due to the parties' unresolved dispute regarding additional restitution. The government requests additional restitution pursuant to 42 U.S.C. § 1395nn. There is no dispute regarding the amounts defendants received in Medicare reimbursements or the amounts defendants paid to Sharp in referral fees. Nor is there dispute that all amounts received in Medicare reimbursements were for medically necessary services that were in fact rendered by defendants. The parties' sole dispute is whether the court has the authority to order restitution of the full amount defendants received in Medicare reimbursements. With respect to Razalan, the government requests restitution of (1) $1,988,771 in Medicare reimbursements, (2) $476,240 in referral payments made to Sharp, and (3) $225,000 agreed to in the Rule 11 plea agreement. With respect to Agustin, the government requests restitution of (1) $998,475 in Medicare

reimbursements and (2) $80,000 agreed to in the Rule 11 plea agreement.[1]  As described below, there is no basis on which the Court can order restitution of all Medicare reimbursements in these cases.

## II. Restitution Under the Sentencing Guidelines

### A. The Law

**1.**

A number of statutes authorize a court to impose restitution as an independent component of a defendant's sentence.  18 U.S.C. § 3663A imposes mandatory restitution in the following cases:

> all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense
> (A) that is –
>     (i) a crime of violence, as defined in [18 U.S.C. §] 16;
>     (ii) an offense against property under [Title 18], or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit; or
>     (iii) an offense describe in [18 U.S.C. §] 1365 (relating to tampering with consumer products); and
> (B) in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.

In addition, 18 U.S.C. § 3663 states:

> The court, when sentencing a defendant convicted of an offense under [Title 18], section 401, 408(a), 409, 416, 420, or 422(a) of the Controlled Substances Act . . . (but in no case shall a participant in an offense under such sections be considered a victim of such offense under this section), or section 5124, 46312, or 46504 of title 49, other than an offense described in section 3663A©, may order . . . that the

---

[1]The government does not explain why it seeks restitution of the referral payments that Razalan made to Sharp, but does not seek restitution of the referral payments that Agustin made to Sharp.

3

defendant make restitution to any victim of such offense.

Finally, a number of statutes authorize restitution for specific offenses that are not relevant to this case.[2] Regardless of the statute on which a court relies, restitution can only be ordered to a victim of the specific offense for which the defendant convicted or plead guilty. Hugley v. United States, 495 U.S. 411, 413 (1990) ("We must decide whether these provisions allow a court to order a defendant tho is charged with multiple offenses but who is convicted of only one offense to make restitution for losses related to the other alleged offenses. We hold that the language and structure of the Act make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction.").

**2.**

When there is no statute specifically providing for restitution, it may be imposed as a condition of supervised release. See 18 U.S.C. § 3553(a)(7). The Sentencing Guidelines state that "[i]n the case of an identifiable victim, the court shall – (1) enter a restitution order for the full amount of the victim's loss . . . ." U.S.S.G. § 5E1.1(a). Neither U.S.S.G. § 5E1.1(a) nor 18 U.S.C. § 3553(a)(7) defines victims. However, the primary statutes regarding restitution define a victim as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. §§ 3663(a)(2), 3663A(a)(2). This harm-based definition of victim is consistent with the Sentencing Guideline's focus on awarding restitution to

---

[2]These statutes are 18 U.S.C. §§ 1593 (peonage, slavery, and trafficking in persons), 2248 (sexual abuse), 2259 (sexual exploitation and other abuse of children), 2264 (domestic violence and stalking) and, 2327 (telemarketing fraud), and 21 U.S.C. § 853(q) (cleanup of clandestine laboratory sites).

4

compensate for a victim's loss. Unless an individual or entity suffers a loss or harm, it cannot be considered a victim.

In the context of a Medicare fraud case, the government cannot claim a loss (and, therefore, cannot be a victim) when a defendant was only reimbursed for legitimate medical services. United States v. Vaghela, 169 F.3d 729, 736 (11th Cir. 1999).[3] In Vaghela, the defendant was convicted of conspiracy to defraud the United States through participation in an illegal referral scheme and was ordered to repay all Medicare reimbursements that were related to the illegal referrals as restitution.[4] The Eleventh Circuit vacated the order for restitution because the government failed to prove the amount of loss. The court held that the government had the burden of proving the amount of loss and stated:

> Thus, unless we are to believe that DHHS received no value at all for Expendicare's work, a proposition for which there is no supporting evidence, we must assume that the loss suffered by DHHS is an amount equivalent to the amount it paid to Extendicare in excess of the value of services rendered.

Id. In other words, the government cannot claim a loss when it reimbursed a Medicare provider for services that were actually rendered unless the payment exceeds the value of the services.

---

[3]The government contends that Vaghela was overruled by United States ex rel. McNutt v. Haleyville Medical Supplies, Inc., 423 F.3d 1256 (11th Cir. 2005). Haleyville does not mention Vaghela and cannot be interpreted to expressly overrule it. Moreover, Haleyville is a civil *qui tam* case arising under the False Claims Act and, as described below, cannot be applied in a criminal setting.

[4]Vaghela was convicted under 18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b(b)(1)(A).

5

**B. Analysis**

**1.**

Although they were indicted under both 18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b(b)(2)(a), Razalan and Agustin only plead guilty to violating 42 U.S.C. § 1320a-7b(a)(2)(ii): Making a False Statement to a Federal Health Care Program. They did not plead guilty to conspiring to defraud the United States or to paying kickbacks for referrals. 42 U.S.C. § 1320a-7b(a)(2)(ii) is not included in any of the statutes that specifically authorize a court to order restitution. Accordingly, the Court cannot order restitution as an independent sentence because it is not authorized by statute.

Even if restitution were possible under the charges initially included in the indictment, the government cannot rely on these statutes as a basis for an order of restitution. Even if Razalan and Agustin did conspire with Sharp to defraud the United States by participating in an illegal referral scheme, that information was not included in the superceding informations to which the defendants plead guilty. As the Supreme Court has stated, restitution cannot be ordered based on a charge that was included in an indictment but was not a basis for conviction. Because it formed the sole basis of the defendants' conviction, the government must rely exclusively on 42 U.S.C. § 1320a-7b(a)(2)(ii) to establish that restitution is authorized.

**2.**

Even without a statutory basis, restitution can form a condition of supervised release under the Sentencing Guidelines if the government can identify a specific victim who suffered an actual loss. In this case, it is difficult to consider the Medicare Trust Fund a victim because there is no evidence of any actual loss. There is no dispute that

6

defendants performed all of the services for which they received reimbursement. There is no dispute that all of the services performed were medically necessary. There is no assertion of overcharging or hidden fees. In sum, the Medicare Trust Fund would have made the same payments if the defendants had not made any false statements. Without a discrepancy between the amount paid by the Medicare Trust Fund and the value of the services rendered, there can be no actual loss for purposes of the Sentencing Guidelines. Therefore, the government is not entitled to an order of restitution under the Sentencing Guidelines.

### III. Restitution under 42 U.S.C. § 1395nn

#### A.

42 U.S.C. § 1395nn is a civil statute that prohibits a physician from making referrals to entities in which it has a financial interest. 42 U.S.C. § 1395nn(a)(1). A financial interest is defined broadly to include "a compensation agreement . . . between the physician . . . and the entity." Id. § 1395nn(a)(2)(B). Thus a kickback scheme in which an entity provides a referral fee to a physician would constitute a violation of the statute. As a sanction, the statute provides that "[n]o payment may be made under this subchapter for a designated health service which is provided in violation of subsection(a)(1) of this section. Several courts have required restitution of all Medicare reimbursements received in violation of 42 § 1395nn(a)(1), regardless of whether or not the reimbursements were for services actually rendered. E.g., United States v. Rogan, 517 F.3d 449 (7th Cir. 2008) (False Claims Act suit against hospital administrator involving kickback scheme); United States ex rel. McNutt v. Haleyville Medical Supplies, Inc., 423 F.3d 1256 (11th Cir. 2007) (qui tam action under the False Claims Act against

7

owners of medical service company involving kickback scheme); United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899 (5th Cir. 1997) (qui tam action under the False Claims Act against health care provider involving kickback scheme).

**B.**

The government's Sentencing Memorandum Regarding Restitution seeks restitution of all reimbursements that Razalan and Agustin obtained from the Medicare Trust Fund that are tainted by the kickback scheme described in the Rule 11 agreement. Despite the fact that Razalan and Agustin only plead guilty to making false statements under 42 U.S.C. § 1320a-7b(a)(2)(ii), the government relies on the self-referral statute, 42 U.S.C. § 1395nn, as a basis for restitution. Despite their similarities, the anti-kickback statute and self-referral statute have several important distinctions:

> First, the self-referral ban applies only to physicians, while the anti-kickback statutes are aimed at curbing overutilization and improper financial consideration by all types of health care providers and suppliers of medical goods and services. . . . Third, t]he self-referral law is a civil statute which includes no criminal provisions, unlike the anti-kickback law, which contains criminal prohibitions. Finally, the self-referral law contains an express prohibition against submitting a claim for reimbursement of services rendered in violations of its provisions, while the anti-kickback law contains no analogous provision.

Dayna Bowen Matthew, *Tainted Prosecution of Tainted Claims: The Law, Economics, and Ethics of Fighting Medical Fraud under the False Claims Act?*, 78 IND. L.J. 525, 554 (2001). Due to these differences, restitution of all Medicare reimbursements is not appropriate as a part of defendants' sentences.

First, 42 U.S.C. § 1320a-7b does not prohibit submission of a claim for

reimbursement of services rendered in violation of its provisions.  Had Congress had the desire to prohibit submission of such claims, it could have done so.  Razalan and Agustin were only charged under 42 U.S.C. § 1320a-7b and only plead guilty to violating that statute.  Because it does not prohibit the submission of a claim for reimbursement of services rendered, there is no reason to order restitution under 42 U.S.C. § 1320a-7b.

Second, as noted above, the self-referral statute is not a criminal statute.  It is a civil statute and is most commonly enforced through the False Claims Act.  All of the cases cited by the government are civil cases arising under the False Claims Act.  The government has not identified any criminal cases awarding restitution under the self-referral statute and the Court is not aware of any.  Given the dearth of authority supporting the application of the self-referral statute in criminal cases, the Court is not willing do so.  If the government believes that it is entitled to restitution of all reimbursements from the Medicare Trust Fund, it can file an action under the False Claims Act.

Third, the self-referral statute only prohibits self-referral by physicians.  While a non-physician may be required to pay restitution under the statute, it must be on the basis of an improper referral <u>by a physician</u>.  E.g., <u>Rogan</u>, 517 F.3d 449; <u>Haleyville Medical Supplies, Inc.</u>, 423 F.3d 1256; <u>Columbia/HCA Healthcare Corp.</u>, 125 F.3d 899.  In this case, there is no evidence establishing that any physicians engaged in prohibited self-referrals.  The indictment alleged that Razalan and Agustin entered into referral agreements with Sharp.  None of these individuals is a physician.  The government has not alleged that the physicians employed by Sharp received remuneration for the

referrals and Razalan and Agustin have made no such admissions.  Even if criminal restitution under the self-referral statute were proper, it would not be appropriate in this case because the government has not established that the statute was violated.

## IV. Conclusion

Razalan and Agustin plead guilty to violating 42 U.S.C. § 1320a-7b(a)(2)(ii) and must be sentenced accordingly.  The statute has no provision for restitution.  Under the Sentencing Guidelines restitution is limited to the government's actual loss, which has not been established in this case.  Restitution cannot be ordered under 42 U.S.C. § 1395nn because it is a civil statute and defendants' liability under the statute has not been established.

The Court will enter an Order of Judgment and Commitment for each defendant which reflects the sentence imposed on May 13, 2010.  Restitution will be limited to the amounts agreed to in the defendants' Rule 11 Plea Agreements.

SO ORDERED.


Dated:  May 26, 2010           S/Avern Cohn
                                    AVERN COHN
                                    UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, May 26, 2010, by electronic and/or ordinary mail.

                                    S/Julie Owens
                                    Case Manager, (313) 234-5160